Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| JUAN W. HOWE HERNÁNDEZ | | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor |
|---|---|---|
| Recurrente | KLRA202500107 | |
| v. | | Sobre: Condominio (Ley 104-1958, según enmendada) |
| CONSEJO DE TITULARES DEL CONDOMINIO TORRE SAN MIGUEL | | |
| Recurrido | | Querella Número: C-SAN-2019-0005331 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de agosto de 2025.

El recurrente, Juan W. Howe Hernández, comparece ante nos para que dejemos sin efecto la determinación emitida por el Departamento de Asuntos del Consumidor (DACo), el 12 de diciembre de 2024, notificada el 13 de diciembre de ese mismo año. Mediante la misma, el referido organismo declaró *No Ha Lugar* una *Querella* instada por el recurrente, ordenando así, el cierre y archivo de esta.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida.

**I**

El 12 de agosto de 2019, el recurrente presentó la querella de epígrafe, pliego que posteriormente enmendó. En la querella enmendada, el recurrente alegó que la Asamblea Ordinaria, celebrada el 11 de julio de 2019 por el Consejo de Titulares del Condominio Torre San Miguel (en adelante, parte recurrida o Consejo de Titulares), adoleció de múltiples irregularidades. En consecuencia, solicitó que se declarara la nulidad de la asamblea,

se ordenara la destitución inmediata de la administradora designada y se impusieran sanciones a la parte recurrida, incluyendo el pago de costas y honorarios de abogado.

En respuesta, el 4 de septiembre de 2019, el Consejo de Titulares presentó una *Moción de Desestimación.* En la misma esbozó que la querella se presentó fuera de término.

Así las cosas, el 9 de enero de 2020, mediante *Moción Solicitando Urgente Cese y Desista y Referido al Departamento de Justicia,* el recurrente denunció que el presidente del Consejo de Titulares, Lcdo. Antonio L. Iguina González, intentó negociar acuerdos de forma directa con él, al margen de su representación legal, en abierta contravención a los Cánones de Ética Profesional. Planteó que tales acercamientos se realizaron sin su conocimiento o consentimiento y que, bajo presión de miembros del Consejo de Titulares, se le exigió firmar un documento que consideraba ilegal. A raíz de lo anterior, solicitó que se ordenara al licenciado Iguina González abstenerse de cualquier otra intervención directa, que se impusiera una sanción administrativa de diez mil dólares ($10,000.00) al Consejo de Titulares por la conducta denunciada, y que se refiriera el asunto al Departamento de Justicia, ante la posibilidad de que se hubiese incurrido en conducta delictiva.

Por su parte, el 10 de enero de 2020, la parte recurrida presentó *Moción Solicitando Desestimación y Oposición a Moción Urgente Solicitando Cese y Desista y Referido al Departamento de Justicia.* En el referido pliego, la parte recurrida esbozó que, tras una reunión celebrada el 28 de octubre del 2019, con los integrantes de la Junta de Directores, el recurrente aceptó consignar por escrito unas condiciones para desistir de su reclamación, las cuales fueron atendidas en su totalidad y ratificadas en la Asamblea Extraordinaria celebrada el 10 de diciembre de 2019. En vista de ello, la parte recurrida planteó que el recurrente incumplió el

referido acuerdo al negarse posteriormente a desistir de la querella. Catalogó, además, como infundadas las alegaciones del recurrente en cuanto a que se sintió hostigado, intimidado u obligado a firmar el documento negociado. Por el contrario, sostuvo que el recurrente prestó su consentimiento de forma libre, voluntaria e inteligente, y que su alegación respondía únicamente a un intento por eludir las obligaciones contractuales libremente asumidas. Así, solicitó la desestimación de la querella, argumentando que la controversia se tornó académica al haber sido ratificados todos los acuerdos en la asamblea subsiguiente y haberse cumplido las exigencias previamente acordadas.

En respuesta, el recurrente presentó una *Oposición a "Moción Solicitando Desestimación" y Réplica a "Oposición a Moción [U]rgente Solicitando Cese y Desista y Referido al Departamento de Justicia"*. Mediante el referido pliego, el recurrente, por conducto de su representación legal, insistió en que nunca autorizó los acuerdos que la parte recurrida pretendía hacer valer. Alegó que las gestiones realizadas por el licenciado Iguina González se efectuaron al margen del consentimiento informado del señor Howe Hernández, y con el objetivo de validar transacciones contrarias al ordenamiento jurídico. Expuso, además, que los intentos por hacer cumplir dicho acuerdo resultaban improcedentes y atentaban contra los Cánones de Ética que rigen la profesión legal. Asimismo, mantuvo su planteamiento de que el licenciado Iguina González procuró inducir al recurrente a incurrir en conducta ilegal, razón por la cual solicitó nuevamente la imposición de sanciones y que el asunto se refiriera al Departamento de Justicia.

Luego de evaluar los escritos presentados, el 24 de mayo de 2021, el DACo emitió una *Resolución Sumaria* mediante la cual decretó la desestimación de la querella presentada por el recurrente y ordenó el cierre y archivo del caso. En su determinación, concluyó

que los señalamientos relacionados con la Asamblea Ordinaria celebrada el 11 de julio de 2019, que motivaron la presentación de la querella, fueron atendidos y ratificados en la Asamblea Extraordinaria celebrada el 10 de diciembre de 2019, conforme a los acuerdos alcanzados entre las partes, por lo que la controversia se había tornado académica. Además, determinó que el recurrente actuó contra sus mismos actos, al pretender anular acuerdos alcanzados y suscritos con la parte recurrida.

En desacuerdo con la determinación, el recurrente acudió ante este Foro mediante recurso de *Revisión Administrativa*, en el que solicitó la revocación de la *Resolución Sumaria* emitida por el foro primario el 24 de mayo de 2021. Atendido el recurso y con el beneficio de la comparecencia de ambas partes, el 27 de septiembre de 2021, un panel hermano de esta Curia emitió *Sentencia* con nomenclatura KLRA202100372. Mediante la misma, este Foro revocó la referida determinación tras concluir que subsistían controversias sustanciales en torno a la validez del consentimiento prestado por el recurrente al momento de suscribir el acuerdo con la Junta de Directores. Consecuentemente, determinó que no procedía adjudicar el caso sumariamente. En vista de ello, devolvió el caso al DACo para que evaluara si concurrieron las circunstancias que permitieran impugnar el acuerdo y cuestionar su validez, conforme al ordenamiento jurídico aplicable.

Así las cosas, conforme al Mandato emitido por esta Curia, el DACo celebró una vista en sus méritos durante los días 1 de octubre de 2024 y 4 de diciembre de ese mismo año.

Evaluada la prueba, el 13 de diciembre de 2024, el DACo notificó la *Resolución* recurrida. Mediante la misma, el referido organismo declaró *No Ha Lugar* una *Querella* instada por el recurrente, ordenando el cierre y archivo de esta. Conforme a las determinaciones de hechos emitidas por el DACo, quedó acreditado

que el 28 de octubre de 2019 se celebró una reunión de la Junta de Directores del Condominio Torre San Miguel, presidida por el licenciado Iguina González, en la que también participaron el vocal, Freddie de Jesús, la tesorera, Vanessa Rodríguez y la secretaria, Tanya Aguayo Díaz. A dicha reunión asistió el aquí recurrente, quien había sido convocado con el propósito de discutir propuestas de compañías de seguridad recomendadas por él. Según el foro administrativo, durante ese mismo encuentro, la Junta de Directores aprovechó la presencia del recurrente para explorar vías transaccionales que pusieran fin a las controversias que se dilucidaban ante el DACo. A tales efectos, se le requirió que presentara una lista de exigencias para evaluar posibles condiciones de acuerdo.

El DACo consignó que, como resultado de ese proceso, las partes suscribieron un acuerdo digital redactado en la computadora del licenciado Iguina González, el cual fue aprobado unánimemente en la Asamblea Extraordinaria del 10 de diciembre de 2019. El acuerdo incluyó, entre otras condiciones, la ratificación de los contratos de seguridad, mantenimiento, jardinería y contabilidad, el relevo del entonces abogado del condominio, licenciado Juan Carlos Garay Massey, y el pago de cuatrocientos cincuenta dólares ($450.00) en concepto de honorarios a la licenciada Rebecca Díaz Guerrero. Asimismo, se determinó que ningún abogado estuvo presente en la referida reunión del 28 de octubre de 2019 y que no se evidenció la existencia de coacción, intimidación o dolo al momento de la firma. El foro administrativo también constató la autenticidad del acuerdo mediante corroboración documental y mensajes intercambiados por las partes, y concluyó que el recurrente suscribió el acuerdo voluntariamente como parte de un proceso de transacción válidamente constituido.

Inconforme, y luego de denegada una previa solicitud de reconsideración, el 18 de febrero de 2025, la parte recurrente compareció ante nos mediante el presente recurso de revisión judicial. En el mismo formula los siguientes señalamientos:

> Erró el DAC[o] al omitir hechos y evidencia testifical presentada en la Vista sustancial para la controversia respecto a la validez del alegado contrato de transacción por erró[r] en su apreciación de la prueba desfilada.
>
> Erró el DAC[o] al actuar con pasión, prejuicio y parcialidad al concluir como v[á]lido el alegado contrato de transacción (1) a pesar del mismo ser contrario a la Ley y (b) a pesar de no haber sido debidamente autenticado por la parte recurrida.
>
> Erró el DAC[o] en su determinación de validez al alegado contrato de transacción dado que el mismo es contrario a la Ley ya que el Lcdo. Iguina violó los [C]ánones de [É]tica de la profesión al inducir el mismo con el querellante a pesar de tener conocimiento de que éste a los efectos de la querella a quo contaba con representación legal y adelantó el mismo sin comunicarse con ésta y al margen de ella.

Luego de examinar el expediente de autos, así como la transcripción de los procedimientos orales, estamos en posición de resolver.

**II**

**A**

Es norma firmemente establecida en el estado de derecho vigente, que los tribunales apelativos están llamados a abstenerse de intervenir con las decisiones emitidas por las agencias administrativas, todo en deferencia a la vasta experiencia y conocimiento especializado que les han sido encomendados. *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR ___ (2024); *Otero Rivera v. Bella Retail Group, Inc.,* 2024 TSPR 70, 213 DPR ___ (2024); *Voili Voilá Corp. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR ___ (2024); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821-822 (2012); *Asoc. Fcias. v. Caribe Specialty II et al.,* 179 DPR 923, 940 (2010). En este contexto, la Sección 4.5 de la Ley de Procedimiento

Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, establece el alcance de la revisión judicial respecto a las determinaciones administrativas. A tal efecto, la referida disposición legal expresa como sigue:

> El Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.
>
> 3 LPRA sec. 9675.

Al momento de revisar una decisión agencial, los tribunales deben ceñirse a evaluar la *razonabilidad* de la actuación del organismo. *Rolón Martínez v. Supte. Policía,* supra; *The Sembler Co. v. Mun. de Carolina,* supra. Por ello, los tribunales no deben intervenir o alterar las determinaciones de hechos que emitan, siempre que estén sostenidas por *evidencia sustancial* que surja de la *totalidad del expediente administrativo. Otero v. Toyota,* 163 DPR 716, 727-728 (2005); *Pacheco v. Estancias,* 160 DPR 409, 431-432 (2003). Nuestro Tribunal Supremo ha definido el referido concepto como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Rolón Martínez v. Supte. Policía,* supra; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 437 (1997). Por tanto, compete a la parte que impugne la legitimidad de lo resuelto por un organismo administrativo, identificar prueba suficiente para derrotar la presunción de corrección y regularidad que les asiste. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019).

A tenor con esta norma, los foros judiciales limitan su intervención a evaluar si la decisión de la agencia es razonable y no

si hizo una determinación correcta de los hechos ante su consideración. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* supra. En caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener lo concluido por la agencia, evitando sustituir el criterio del organismo por sus propias apreciaciones. *Pacheco v. Estancias,* supra. Ahora bien, esta deferencia no es absoluta. La misma cede cuando está presente alguna de las siguientes instancias: (1) cuando la decisión no está fundamentada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la apreciación de la ley, y; (3) cuando ha mediado una actuación irrazonable, o ilegal. *Jusino Rodríguez v. Junta de Retiro,* supra; *Otero Rivera v. Bella Retail Group, Inc.,* supra; *Voili Voilá Corp. v. Mun. Guaynabo,* supra; *Costa Azul v. Comisión*, 170 DPR 847, 853 (2007).

**B**

Ahora bien, en lo pertinente a la controversia ante nos, mediante el contrato de transacción, "las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado". Artículo 1709, Código Civil, 31 LPRA sec. 4821.[1] Este tipo de vínculo supone la existencia de una relación jurídica incierta, que, mediante concesiones recíprocas de los interesados, puede quedar resuelta en aras de evitar los rigorismos propios al empleo de los mecanismos judiciales. *Fonseca et al. v. Hosp. HIMA*, 184 DPR 281, 290 (2012); *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 238 (2007); *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 870 (1995). En virtud de lo anterior, la doctrina interpretativa aplicable define los elementos constitutivos de un acuerdo transaccional, a saber: 1)

---

[1] Dado a que los hechos de la presente causa acontecieron previo a la aprobación del Código Civil de 2020, dispondremos de la misma al amparo de lo estatuido en el Código Civil de 1930, cuerpo legal vigente al momento de los hechos en controversia.

existencia de una relación jurídica incierta litigiosa; 2) intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable y; 3) recíprocas concesiones de las partes. *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 729 (2018); *Fonseca et al. v. Hosp. HIMA,* supra, págs. 290-291; *Orsini García v. Srio. de Hacienda,* 177 DPR 596, 624-625 (2009); *Mun. de San Juan v. Prof. Research,* supra, pág. 239.

El contrato de transacción da lugar a nuevos vínculos obligacionales que sustituyen aquellos que se modifican o se extinguen. En este contexto, la doctrina interpretativa los clasifica en dos grupos, a saber: el contrato de transacción extrajudicial o el judicial. En el primero de los escenarios, como norma, las partes acuerdan resolver su disputa sin intervención judicial. En el segundo escenario, el contrato surge luego de iniciado un pleito, en el cual las partes convienen eliminar la controversia entre ellos habida, incorporando su acuerdo a las formalidades del proceso, para que sea debidamente aprobado y se dé por terminado el asunto. *Neca Mortg. Corp. v. A&W Dev., S.E.,* supra, págs. 870-871. Conforme dispone la norma aplicable, la transacción judicial tiene el efecto de una sentencia firme y autoridad de cosa juzgada, por lo que, una vez medie la autorización del juzgador competente, las partes deberán atenerse a las cuestiones definitivamente resueltas por su propia anuencia. 31 LPRA sec. 4827; *Monteagudo Pérez v. E.L.A.,* 172 DPR 12, 18 (2007); *Neca Mortg. Corp. v. A&W Dev., S.E.,* supra, págs. 871-872.

Todo contrato de transacción judicial debe ser interpretado restrictivamente, atendiéndose lo allí expresamente estatuido o lo que, por inducción necesaria, pueda derivarse de sus términos. 31 LPRA sec. 4826. Lo anterior encuentra fundamento en el hecho de que a este tipo de vínculo le es aplicable la doctrina general de hermenéutica propia del derecho de obligaciones y contratos,

siempre que no sea incompatible con las normas que regulan su eficacia. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 721 (2022); *Fonseca et al. v. Hosp. HIMA*, supra, pág. 291; *Negrón Rivera y Bonilla, Ex parte,* 120 DPR 61, 74-75 (1987).

## C

Por su parte, sabido es que, en materia de derecho administrativo, el ordenamiento jurídico es enfático al reconocer que, de ordinario, las Reglas de Evidencia no aplican en los procedimientos de adjudicación. *OEG v. Rodríguez,* 159 DPR 98, 112 (2003). A tal efecto y en lo aquí pertinente, la Sección 3.13 (e) de la Ley de Procedimiento Administrativo Uniforme, dispone como sigue:

> […]
>
> (e) Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.
>
> […]
>
> 3 LPRA sec. 9653 (e).

Estas normas tienen como propósito liberar los procedimientos administrativos de las "trabas procesales de los tribunales de justicia". *OEG v. Rodríguez*, supra. Por tanto, la precitada disposición responde al fin de promover el que los procedimientos correspondientes se lleven a cabo de manera ágil y sencilla. *López Vives v. Policía de P.R.,* 118 DPR 219, 231 (1987). Ahora bien, en cuanto a la aplicación de los "principios fundamentales" de las Reglas de Evidencia, la doctrina interpretativa pertinente reconoce que ello habrá de operar, en tanto no redunde en incompatibilidad alguna respecto a la naturaleza del proceso, y siempre que propenda a la más correcta y económica disposición de la controversia. Siendo de este modo y a los efectos de que el adjudicador concernido tenga ante sí toda la información

pertinente a la controversia sometida a su escrutinio, el ordenamiento jurídico vigente dispone que la interpretación de las normas propias al derecho probatorio es mucho más liberal en el ámbito administrativo que en el judicial. *OEG v. Rodríguez,* supra, pág. 113; *JRT v. Aut. de Comunicaciones,* 110 DPR 879, 884 (1981).

**III**

En el caso de autos, el recurrente plantea que erró el DACo al declarar *No Ha Lugar* la *Querella* de epígrafe. Como primer señalamiento de error, sostiene que el foro administrativo incurrió en una apreciación incorrecta de la prueba, al omitir hechos y evidencia testifical que, a su juicio, son determinantes para resolver la controversia. En particular, alude a su alegación de que fue objeto de presión e intimidación por parte de los miembros de la Junta de Directores para que suscribiera el alegado contrato de transacción.

Según detallado previamente, el 27 de septiembre de 2021, un panel hermano de esta Curia emitió *Sentencia* con la nomenclatura KLRA202100372. En aquella ocasión, este Foro concluyó que subsistían controversias sustanciales en torno a la validez del consentimiento prestado por el recurrente al momento de suscribir el acuerdo con la Junta de Directores, razón por la cual devolvió el caso al DACo para la celebración de una vista evidenciaria que le permitiera determinar si el consentimiento del recurrente, al momento de suscribir el acuerdo, adolecía de vicios por causa de intimidación o dolo. Así las cosas, conforme al Mandato emitido por esta Curia, el DACo celebró una vista en sus méritos durante los días 1 de octubre de 2024 y 4 de diciembre de ese mismo año.

Luego de un examen de la transcripción de los procedimientos ante el DACo, concluimos que no se presentó evidencia alguna de intimidación, coacción o dolo en los acuerdos alcanzados. De hecho, el recurrente no manifestó, en ningún momento, haberse sentido intimidado, presionado o que su voluntad estuviese viciada al

momento de suscribir el acuerdo en cuestión. Por el contrario, de su propio testimonio se desprende que lo único que expresó fue haber firmado en la computadora del presidente de la Junta de Directores sin haber leído el contenido que aparecía en la pantalla, bajo la impresión de que se trataba de una hoja de asistencia.[2] Es decir, su testimonio se ciñó a reproducir su desconocimiento sobre el contenido del documento firmado, sin aportar un solo ápice de prueba que evidenciara intimidación, coacción o dolo por parte de los miembros de la Junta de Directores.

A lo antes expuesto, resulta preciso sumar el testimonio del licenciado Antonio L. Iguina González, el entonces Presidente de la Junta de Directores del Condominio Torre San Miguel. A preguntas sobre los hechos en disputa, el licenciado Iguina González expresó que, la reunión efectuada el 28 de octubre de 2019 fue citada con el propósito de evaluar las propuestas de compañías de seguridad recomendadas por el aquí recurrente.[3] Aclaró que asistió en calidad de Presidente de la Junta, y no como representante legal de alguna de las partes.[4] Enfatizó que en dicha reunión no estuvo presente ningún abogado, y que la misma se documentó mediante la redacción de un acta oficial. Explicó que, ante la presencia del recurrente, la Junta de Directores aprovechó la ocasión para discutir términos que permitieran poner fin a las controversias pendientes ante el DACo. Como parte de ese proceso, se le solicitó al recurrente que presentara una lista de exigencias con miras a viabilizar una posible transacción. Producto de esas gestiones, la Junta de Directores accedió, entre otras cosas, a ratificar los contratos de seguridad, mantenimiento, contabilidad y jardinería; a solicitar la renuncia del entonces abogado del condominio,

---

[2] Véase página 62 de la Transcripción de la Prueba Oral (TPO) de la vista celebrada el 1 de octubre de 2024.
[3] Véase págs. 70 y 71 de la TPO.
[4] Véase pág. 82 de la TPO.

licenciado Juan Carlos Garay Massey; y a pagar la suma de cuatrocientos cincuenta dólares ($450.00) a la licenciada Rebecca Díaz Guerrero en concepto de honorarios.[5] Según Iguina González, el recurrente firmó digitalmente el acuerdo en cuestión en la computadora que él tenía disponible durante la reunión. Precisó, además, que luego de la referida reunión, sostuvo múltiples intercambios por la aplicación de mensajería WhatsApp y por correo electrónico, los cuales corroboraban de forma inequívoca que en la reunión del 28 de octubre de 2019 se alcanzó un acuerdo con el recurrente para finiquitar la controversia ante el DACo. Dichos intercambios de mensajes fueron presentados como evidencia en la vista. Además, se leyó el acuerdo en virtud del cual el recurrente iba a desistir de sus reclamaciones y querellas ante el DACo.

Tales testimonios contrastan marcadamente con la alegación del recurrente en cuanto a que su consentimiento estuvo viciado o que fue objeto de intimidación o coacción por parte de la Junta de Directores, pues reflejan una participación activa y voluntaria en el curso de las gestiones que condujeron a la firma del acuerdo transaccional. En mérito de lo antes expuesto, al igual que el foro administrativo, colegimos que el recurrente suscribió el acuerdo voluntariamente como parte de un proceso de transacción válidamente constituido. El primer error no se cometió.

Por otra parte, a fin de prevalecer en sus argumentos, el recurrente planteó un segundo señalamiento de error, en el cual alegó que el foro administrativo actuó con parcialidad y prejuicio al considerar como válido el acuerdo en cuestión. En específico, sostuvo que el documento era, a su juicio, contrario a derecho y no había sido debidamente autenticado por la parte recurrida, por lo que su admisión constituyó un error de carácter probatorio.

---

[5] Véase pág. 75 de la TPO.

El recurrente erró en su pretensión de hacer prevalecer la aplicación estricta de las Reglas de Evidencia en el caso de epígrafe. En tanto el presente asunto se ventila ante un foro de naturaleza administrativa, no procede imponer tal rigurosidad procesal. Tal cual previamente expuesto, en la esfera administrativa, de ordinario, las Reglas de Evidencia no son de aplicación. Ahora bien, siempre que se propicie la disposición más ágil y económica del asunto ante la consideración del foro administrativo, pueden tomarse en cuenta los principios fundamentales de evidencia durante el trámite. Sin embargo, su aplicación no observa el mismo rigor que en el ámbito judicial. Ello así, puesto que los procesos administrativos procuran la disposición ágil, sencilla y expedita de los asuntos sometidos a su consideración, sustrayendo los mismos de las trabas procesales y probatorias propias de la maquinaria judicial.

Además, en el caso de autos, surge de la transcripción de los procedimientos que fue la parte recurrente quien, al sentar al licenciado Iguina González, propició la discusión del contrato de transacción judicial. Fue precisamente durante su testimonio que se trajo a colación el documento y este fue presentado formalmente.[6] Cabe señalar que el contrato obraba firmado por todas las partes involucradas.

Por último, en su tercer señalamiento de error, el recurrente alegó que el foro administrativo erró al validar un acuerdo cuya formación resultó viciada por una conducta contraria a los Cánones de Ética que rigen la profesión legal, al sostener que el licenciado Iguina González indujo al querellante a firmar el documento sin haber mediado comunicación con su representante legal, pese a tener conocimiento de su existencia. No le asiste la razón.

---

[6] Véase págs. 124 y 125 de la TPO.

Como reseñamos anteriormente, surge de la transcripción de la vista que el licenciado Iguina González compareció en calidad de Presidente de la Junta, y no en funciones de representación legal. En ausencia de prueba sustancial que evidencie conducta impropia o manipulación en la formación del contrato, el planteamiento de que el acuerdo fue suscrito sin conocimiento o consentimiento informado carece de base jurídica y fáctica.

Tal cual esbozado, los pronunciamientos de las agencias administrativas gozan de un amplio margen de deferencia por parte del tribunal revisor, ello dado su conocimiento especializado en la materia que regulan. En este escenario, nuestra función estriba en resolver si los mismos son razonables a luz de la prueba que obra en el expediente administrativo. Así pues, luego de analizar los planteamientos hechos por el recurrente, de examinar el expediente ante nos y la transcripción de la prueba oral, coincidimos con la *Resolución* recurrida. El recurrente no logró demostrar que el foro administrativo hubiera errado en su apreciación de la prueba o que hubiera actuado con prejuicio, pasión o parcialidad al emitir la determinación recurrida. En vista de todo lo anterior, no encontramos en el presente caso razones para variar las determinaciones y conclusiones emitidas por el foro administrativo. Por ende, no se cometieron los errores señalados por el recurrente y, en consecuencia, procede confirmar el dictamen apelado.

**IV**

Por los fundamentos que anteceden, se confirma la resolución administrativa recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones